385 So.2d 510 (1980)
PENINSULAR FIRE INSURANCE COMPANY
v.
LOUISIANA DEBATING & LITERARY ASSOCIATION and Travelers Insurance Company.
No. 10471.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
Rehearing Denied July 21, 1980.
*511 Lemle, Kelleher, Kohlmeyer & Matthews, Albert H. Hanemann, Jr. and David S. Kelly, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald O. Collins, New Orleans, for defendants-appellees.
Before SAMUEL, LEMMON and GULOTTA, JJ.
SAMUEL, Judge.
Peninsular Fire Insurance Company filed this suit against Louisiana Debating & Literary Association and its insurer Travelers Insurance Company, seeking recovery of $129,653.36 paid by Peninsular to its insured, Commonwealth Savings Association, as a result of smoke and water damage to Commonwealth's leasehold improvements located in Louisiana Debating's building at 313-317 St. Charles Avenue in New Orleans. Peninsular sues as subrogee of Commonwealth.
Defendants answered, denying liability and relying upon a provision in the written lease between Louisiana Debating and Commonwealth by which the former attempted to relieve itself of liability to Commonwealth in the event of fire damage.
The "Fire Clause" contained in the lease reads as follows:
"If through no fault, neglect, or design of lessee, the premises are destroyed by fire or other casualty or damaged to such an extent as to render them wholly unfit for occupancy, then this lease shall be cancelled."
The clause further provides for continuation of the lease in spite of fire damage under certain circumstances. The fire clause as quoted above was qualified by an addition to the lease, referred to as "Appendix A" which states:
"Lessee shall maintain fire, extended coverage, windstorm and vandalism and malicious mischief insurance to the extent of the full value of all repairs, betterments and improvements made by the Lessee to the leased premises.
Reference is made to the Fire Clause of this lease namely Lines 147 through 152 of the printed portion of the lease. It is expressly agreed that if this lease is cancelled pursuant to the first sentence of the Fire Clause or continued pursuant to the second sentence thereof, there shall be no responsibility on the part of Lessor to pay to Lessee any sum for damages to betterments or improvements made by Lessee on the leased premises or contained therein...."
The premises leased by Commonwealth from the Debating Society is located on the ground floor of a four-story building owned by the Society at the corner of St. Charles Avenue and Union Street in New Orleans' central business district. The leased premises constituted Commonwealth's main business offices. The upper three floors of the building were used and occupied by the Debating Society.
On the night of January 26, 1977 a fire started on the fourth floor of the building, in an area where the Society stores Mardi Gras costumes. Fire damage was confined essentially to the fourth floor, but Commonwealth's offices were heavily damaged by water and smoke. Peninsular paid the loss pursuant to the coverages afforded in its policy to Commonwealth, and then filed this suit to enforce its subrogation rights.
In his reasons for judgment, the trial judge stated plaintiff had proved the negligence of the Society in that the fire was started by the carelessness of one of its employees by discarding a lit cigarette or match in a careless fashion. Nevertheless, *512 the trial judge held in favor of the defendants, basing his decision on the fire clause of the lease and on the above quoted provisions of Appendix A thereto. The issue is whether the trial judge correctly held in favor of defendants on the basis of the lease provisions.
Plaintiff seeks reversal on the grounds that it is against public policy for a person to relieve himself contractually of liability for his own future negligence and that, even if the lease provisions relied upon by defendants are enforceable, they are nevertheless ambiguous, and the ambiguity contained therein should be construed against defendants who drafted the lease provisions. Plaintiff relies on numerous cases, among which are Hayes v. Hayes, 8 La.App. 468, Plantation Pipeline Co. v. Kaiser Alum. & Chem. Corp., La.App., 222 So.2d 905, and Sandel & Lastrapes v. City of Shreveport, La.App., 129 So.2d 620. Plaintiff attempts to distinguish cases which have held valid assumption of risk release clauses in cases where the risk was disclosed or apparent to the releasing party.[1]
We agree with the holding of the trial court. In his reasons for judgment, the trial judge stated:
"This written lease between landlord and tenant was negotiated by competent, experienced parties represented by competent and able lawyers. That lease is the law between those parties. By virtue of the fire clause in that lease, there was by contract no responsibility or liability on the part of the lessor to pay fire damages to the lessee for damages to any betterments or improvements made by the lessee to or on the leased premises."
Our reading of the lease shows the language regarding the fire clause is unambiguous to the extent it specifically requires the lessee to provide insurance coverage for its own loss as a direct result of fire, and that the lessee does not have a valid claim for damages against lessor for betterments or improvements which the former made to the structure. It can hardly be said that the danger of fire, particularly where buildings are so close to each other as they are in the central business district of New Orleans, is a risk not known to owners of property and tenants in that district. Consequently we conclude the language relied upon by defendant is sanctioned by those cases allowing the party to disclose a risk, or to absolve itself from a risk, already known to the leasing party.
Of the total damages paid by plaintiff and claimed against defendants, $124,763.03 represents damage to leasehold improvements. The remaining $4,890.33 included $900.88 for a Lanier Dictation System, $2,989.45 for preservation costs, and $1,000 for "extra expense" allowed by the plaintiff's policy. Plaintiff argues that these items of damages did not constitute "betterments or improvements made by lessee on the leased premises or contained therein." Plaintiff consequently concludes that the negligence of defendants' employee requires judgment for these non-leasehold damage items.
It is doubtful that preservation costs just under $3,000 and "extra expense" of $1,000 were expended for anything other than the preservation of and damage to leasehold improvements. Consequently the only item which we hold not to fall within the provisions of the lease is the Lanier Dictation System, and we amend the trial judge's judgment to award plaintiff its replacement cost.
For the reasons assigned, the judgment appealed from is amended to award to plaintiff the sum of $900.88 as replacement cost of the Lanier Dictation System sued for by plaintiff. As thus amended, and in all other respects, the judgment appealed from is affirmed. Costs in this court are to be paid by the defendants; all other costs are to be paid by the plaintiff.
AMENDED AND AFFIRMED.
LEMMON, J., concurs and assigns reasons.
*513 LEMMON, J., concurring and assigning reasons.
This is a tort case. The tort victim's subrogee is attempting to recover the tort victim's damages sustained in a fire admittedly caused by the tortfeasor. The tortfeasor's defense is that it is not liable, either in contract or in tort, to repair the damages, because of an express contract provision.[1] In rebuttal the tort victim's subrogee asserts that a party cannot contract away in advance his tort liability for his own negligence or, if he can, may do so only in express terms.
I might agree with the latter contention if this were a suit by the lessee (tort victim) directly against the lessor (tortfeasor) in the absence of a contract provision requiring the lessee to carry fire insurance. However, the damages at issue involve only the lessee's improvements which will ultimately be owned by the lessor, who therefore, has an insurable interest therein.
In the lease contract the lessor required the lessee to insure its own improvements against fire and to repair the improvements in the event the lease is continued pursuant to the fire clause after fire damage to the premises. The intent of this requirement was to assure not only that the improvements were covered by insurance, but also that the insurance proceeds from partial destruction by fire would be used to repair the improvements and thus benefit the lessor. In effect, the parties intended the lessor to be treated as an insured under the required fire policy.
Inasmuch as the lessor had an insurable interest and could have been named as an insured to the extent of that interest in the fire policy (apparently at no additional cost because there was no additional risk), the subrogation claim of the fire insurer should be viewed in this case as if the lessor were an insured, since the parties to the lease (which should be read with the fire policy) intended the lessor to be a beneficiary of the fire policy and since there would be no detriment to the insurer if that intent had been carried out by naming the lessor as an insured in the policy required by the lease.
The fire insurer does not have the right to subrogation against its own insured when the insured negligently causes a fire. Since the lessor (who caused the fire) was an intended beneficiary, and in effect an insured under the fire policy pursuant to the intention of all parties (an intention with which the fire insurer presumably would have agreed, since there was no added risk), the fire insurer should not be entitled to subrogation against the lessor. The right of the lessee to grant subrogation against the lessor (with an insurable interest) was waived in the contract of lease.
NOTES
[1] See, for example, Forsyth v. Jefferson Downs, Inc., La.App., 152 So.2d 369; Celestin v. Employers Mutual Liability Insurance Co. of Wis., 387 F.2d 539 (5th Cir. 1968).
[1] The two paragraphs of Appendix "A" pertinent to this case read in their entirety as follows:

"Lessee shall maintain fire, extended coverage, windstorm and vandalism and malicious mischief insurance to the extent of the full value of all repairs, betterments and improvements made by Lessee to the leased premises.
"Reference is made to the Fire Clause of this lease namely Lines 147 through 152 of the printed portion of the lease. It is expressly agreed that if this lease is cancelled pursuant to the first sentence of the Fire Clause or continued pursuant to the second sentence thereof, there shall be no responsibility on the part of Lessor to pay to Lessee any sum for damages to betterments or improvements made by Lessee on the leased premises or contained therein. It is further expressly agreed that Lessor's obligation to repair the leased premises pursuant to the second sentence of the Fire Clause shall not include any obligation to repair or replace any betterments or improvements, made by Lessee on the leased premises or contained therein. In the event Lessor becomes obligated to repair the leased premises pursuant to the second sentence of the Fire Clause Lessee shall be obligated to repair any betterments or improvements made by Lessee on the leased premises or contained therein."