588 So.2d 361 (1991)
HOME INSURANCE CO. OF ILLINOIS, et al.
v.
NATIONAL TEA CO., et al.
VIGILANT INSURANCE COMPANY
v.
NATIONAL TEA COMPANY, et al.
Nos. 91-C-0692, 91-C-0667.
Supreme Court of Louisiana.
October 21, 1991.
Rehearing Denied November 21, 1991.
Harry A. Johnson, III, J. Randall Trahan, Phelps, Dunbar, Marks, Claverie & Sims, Baton Rouge, Steven M. Lozes, Lozes & Cambre, New Orleans, for applicants.
*362 Charles V. Guilbault, Donald J. Volpi, Jr., David Shaw, Courtenay, Forstall, Guilbault, Hunter & Fontana, New Orleans, Kevin L. Cole, Michael J. Vondenstein, Hailey, McNamara, Hall, Larmann & Papale, Metairie, Joseph Paul Gordon, Jr., Edward J. Rice, Jr., Lindsey M. Bailleux, Adams & Reese, New Orleans, Christopher M. Moody, Cashe, Lewis, Moody & Coudrain, Hammond, Kristyne H. McCullough, John M. Holahan, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Brad George Theard, Young, Richaud, Theard & Myers, Joseph N. Marcal, III, Arthur H. Leith, McGlinchey, Stafford, Cellini & Lang, New Orleans, Gary A. Bezet, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, Rykert O. Toledano, Jr., Toledano & Toledano, Roger G. Broussard, Ronald G. Hand, Hand & Hand, Covington, Dale W. Poindexter, Poindexter & Oxner, New Orleans, Jack Arthur Blossman, Covington, Frederick R. Bott, Patrick J. Berrigan, Charles F. Seemann, Jr., Joseph L. McReynolds, Deutsch, Kerrigan & Stiles, Timothy M. Waller, Sr., New Orleans, Thomas W. Mull, Lorraine S. Mull, Mull & Mull, Covington, Joseph P. Demarest, Angela C. Imbornone, Favret, Favret, Demarest & Russo, Joseph Tosterud, James M. Colomb, III, E. Kelleher Simon, Simon & Rees, Frank A. Piccolo, Abbott, Best & Meek, David E. Walle, Bienvenu, Foster, Ryan & O'Bannon, Dean A. Sutherland, Sutherland & Juge, Gordon F. Wilson, Friend, Wilson & Draper, New Orleans, Stephen J. Caire, Reed & Caire, Metairie, John N. Chappuis, Voorhies & Labbe, Lafayette, for respondents.
HALL, Justice.
This case involves various claims arising out of a fire which originated in a National Food Store in Covington, Louisiana and caused extensive damage to the shopping mall in which the store was located. The issues to be decided are whether provisions in a shopping center lease effectively (1) released the lessee from liability to the lessor for damages sustained by the lessor as a result of a fire caused by the lessee's fault, thereby precluding recovery from the lessee by the lessor's subrogated fire insurer; and (2) released the lessee, or held the lessee harmless, from liability to other mall tenants and their subrogated insurers for damages they sustained as a result of the fire.
The present controversy is between the lessee, National Tea Company ("National") and its liability insurer, Great Southwest Insurance Company ("Great Southwest"); the lessor's subrogated fire insurer, Vigilant Insurance Company ("Vigilant"); and various other mall tenants and their subrogated insurers (collectively referred to as the "Mall Tenants"). Both the district court and court of appeal allowed recovery by Vigilant and the Mall Tenants against National and its insurers.[1] We reverse as to Vigilant's claims, but affirm as to the Mall Tenants' claims.

I.
Extensive damage to the Bogue Falaya Shopping Center located in Covington, Louisiana, occurred on March 11, 1984, as the result of a fire. The fire originated in or around an oven located in the premises leased by National from the mall owner, Bogue Falaya Plaza, Incorporated (the "Lessor"). The fire spurred numerous lawsuits among the affected parties. Particularly, the Lessor's fire insurer, Vigilant, filed suit against National and its liability insurers, Great Southwest and Twin City; the manufacturer of the oven; and others. The Mall Tenants who suffered damage as a result of the fire also sued National. Numerous cross-claims and reconventional demands were filed. These suits were consolidated for trial, and the trial was bifurcated into liability and damages phases.
After trial on liability, the district court found that the cause of the fire was defective wiring in the oven installed by National, or under National's direction and control, and that the sole cause of the fire was National's fault. The court further found that the lease provisions relied upon by *363 National neither released National from liability to the Lessor and its subrogated fire insurer, Vigilant, nor held National harmless from the Mall Tenants' claims. Judgment was rendered in favor of Vigilant and the Mall Tenants against National and its insurers, Great Southwest and Twin City, for such damages as might be established in the trial on damages. National, among others, appealed.
On appeal, National, while conceding its fault, urged that the district court erred in failing to find that the manufacturer of the oven was at fault and that the lease provisions precluded recovery by the Lessor's fire insurer, Vigilant, and the Mall Tenants. The court of appeal affirmed, with one judge dissenting. Home Insurance Co. of Illinois v. National Tea Co., 577 So.2d 65 (La.App. 1st Cir.1990). The majority held that the release provision "merely outlines the responsibilities to obtain insurance and reconstruct the mall; nothing more, nothing less." Id. at 78. The dissenting judge was of the opinion that by virtue of the lease provisions, Lessor had released National from any claim Lessor had by reason of damages caused by fire, including fire caused by National's fault, whether based on strict liability or negligence. 577 So.2d at 78-80.
National applied for writs, reurging the same assignments of error it urged in the court of appeal. Great Southwest likewise applied for writs. We granted both writ applications, but limited our consideration to the defenses based on the lease provisions. 580 So.2d 364 and 580 So.2d 365 (La.1991).

II.
The parties, or their predecessors, entered into a commercial lease agreement in 1968. Under the terms of the lease, Lessor agreed to rebuild the shopping center in the event of damage caused by fire, to insure the leased premises against damage caused by fire, and to release National from any claims for damages caused by fire. Particularly, the release provision of the lease (paragraph 11), labeled "Fire", provides:
The Lessor hereby covenants and agrees to carry replacement insurance in limits sufficient to rebuild total development including demised premises and does hereby release and discharge the Lessee, its agents, successors and assigns from any and all claims and damages whatsoever from any cause resulting from or arising out of any fire or other casualty on the herein demised premises or on said total development or any part thereof. (emphasis supplied).
Another pertinent provision of the lease is the surrender provision (paragraph 4), labeled "Repairs", which provides:
At expiration of said term, Lessee will quit and surrender the premises hereby demised in as good state and condition as received, reasonable wear and tear incident to Lessee's business and damage by fire or the elements, or from other causes beyond its control excepted. (emphasis supplied).

III.
Lessor's subrogated fire insurer, Vigilant, urges, and the court of appeal held, that the lease provisions quoted above are not sufficiently explicit under the rules of construction set forth by this court in Polozola v. Garlock, Inc., 343 So.2d 1000 (La. 1977), and Soverign Insurance Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986), to exculpate National from liability for fire damage caused by National's fault. Vigilant further urges that the district court found the fire was caused by National's negligence, as well as strict liability, and thus the more stringent test of Polozola should apply.[2]
*364 On the other hand, National urges, supported by the dissent in the court of appeal, that the provisions of the lease are clear, precise and amount to a release by Lessor of all Lessor's claims against the lessee for fire damage, even though caused by National's fault. National further urges that the trial court found it strictly liable, not negligent, but that in any event, the release provision precludes recovery by Lessor's subrogated insurer, Vigilant. National still further urges that the provisions of the lease obligated Lessor to hold it harmless from not only Lessor's claims, but also the Mall Tenants' claims.

IV.
The law as stated in Polozola, supra, is well-settled. Polozola held:
A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms.
343 So.2d at 1003. Continuing, Polozola holds that the general rules which govern the interpretation of other contracts apply in interpreting indemnity contracts.
[A construction that renders a contract virtually nugatory] should be avoided in favor of one that gives the clause effect. La.Civil Code art. 1951 (1870).... When there is doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract. La.Civil Code art. 1948 (1870).... Further, all clauses of a contract should be interpreted the one by the other, giving to each the sense that results from the entire agreement. La.Civil Code art. 1955 (1870).... Finally, when there is anything doubtful in agreements, including indemnity agreements, we must endeavor to ascertain what was the common intention of the parties, rather than adhere to the literal sense of the terms. La.Civil Code art. 1950 (1870).
Id. When after applying the rules set forth above, i.e., the general rules governing the construction of contracts and interpreting the provisions of a contract as a whole, the intent of the parties to indemnify against negligence remains equivocal, a presumption or inference arises that the parties did not intend to hold the indemnitee harmless from such liability.
Soverign, supra, held that a slightly different standard governs when the indemnitee's liability is based on strict liability rather than negligence. Simply put, Soverign held that the Polozola rule of strict construction, discussed above, is inapplicable to an agreement to indemnify against strict liability under LSA-C.C. Article 2317. Moreover, in that context, Soverign held that a court is called upon to further construe the agreement in light of everything that by law, custom, usage or equity is considered incidental to the contract in question or necessary to carry it into effect. 488 So.2d at 985.
Whether National's fault is based on negligence or strict liability, we find that the release provision clearly and expressly releases National from liability to Lessor for damages resulting from fire, whether caused by National's fault or otherwise. As plainly expressed in the lease, the parties' clear intent was to shift the risk of fire loss to Lessor's fire insurer. Lessor expressly released National from any claims for damages caused by fire. The only claims Lessor could have against National for damages caused by fire were claims based on National's fault. See LSA-C.C. Art. 2723.[3] Significantly, in the release provision Lessor expressly "releases and discharges" from liability not only National, but also National's "agents." Logic dictates that the only claims Lessor *365 could have against National's "agents" were claims arising out of the fault of such "agents." A finding that the release clause does not relieve National from damages resulting from fire caused by National's fault would render the clause virtually nugatory, contrary to the applicable rules of construction.
The parties' intent to shift the risk of loss by fire however caused to Lessor and its fire insurer is further evidenced by the express requirement in the lease that Lessor insure the leased premises. As the dissent in the court of appeal stated, "the fact that lessor agreed to provide coverage was not accidental, but was clearly bargained for during the drafting of the lease agreement. No one appears to seriously suggest that one side had an unfair bargaining advantage over the other." Home Insurance, 577 So.2d at 79. Moreover, the Lessor did in fact procure fire insurance through Vigilant.[4]
Nonetheless, Vigilant contends that the release provision refers to contractual, as opposed to tort, claims by Lessor for damages resulting from National's fault. However, contractual rights in the event of fire are specifically provided for in other provisions of the lease. For instance, the surrender provision obligated National to return the premises in good condition, excepting reasonable wear and tear, and "damage by fire," further evidencing the parties' intent that National should not be responsible to Lessor for damage caused by fire. Other provisions regulate rebuilding, replacement and abatement of rent.
Vigilant additionally contends that as the release provision is broadly wordedreferring to "any and all claims and damages" and "any fire or other casualty"the provision cannot be construed as evidencing an unequivocal intent to allocate the risk of all fires to Lessor. We recognize that general verbiage such as "any and all liability" does not necessarily suffice to express an intent to assume liability for another's fault. Arnold v. Stupp Corp., 205 So.2d 797 (La.App. 1st Cir.1967), writ refused, 251 La. 936, 207 So.2d 540 (1968). The release provision, however, is specific. Turning again to the dissent in the court of appeal, "the lease provision in question is narrowly tailored to include only damage by fire and other similar cause." Home Insurance, 577 So.2d at 80.
Our construction of the release provision is further supported by the absence of the equitable considerations that underlie the Polozola rule of strict construction. As we noted in Soverign, supra, "impos[ing] on a person an obligation to indemnify another against the indemnitee's own negligence without the obligor's unambiguous consent is contrary to the principles of equity." 488 So.2d at 986. The equitable basis for this rule, we observed, is that the obligor lacks the ability to evaluate, predict, or control the risk that the indemnitee's future conduct may create. Id. To ensure that the indemnitee is not unjustly enriched at the obligor's expense, equity dictates that such a provision be enforced only if there is clear evidence that the risk was bargained for and accepted. Id. We further noted that "such an injustice may encourage antisocial acts and a relaxation of vigilance toward the rights of others by relieving the wrongdoer of liability for his conduct." Id.
In the instant case, these equitable considerations are absent. Indeed, as the dissent in the court of appeal aptly articulated, the absence of these considerations is revealed by the fact that, "the lessor did not need to evaluate or predict the riskit purchased insurance from Vigilant for that purpose. Finally, under the facts presented, upholding the contract will not promote a lack of vigilance on National's part." Home Insurance, 577 So.2d at 80. Accordingly, since Lessor released National from any claims for damage caused by fire, Lessor *366 had no rights to which its fire insurer, Vigilant, could be subrogated, and Viligant's demands must be rejected.[5]

V.
As mentioned above, a second issue to be decided is whether under the lease provisions Lessor effectively released National, or agreed to hold National harmless from, the Mall Tenants' claims. The court of appeal found that the lease does not address the allocation of liability among Lessor, National and third parties, such as the Mall Tenants. Home Insurance, 577 So.2d at 78. The dissent in the court of appeal agreed with the majority on this issue. We also agree.
While, as discussed above, the lease provisions expressly allocate the liability for damage caused by fire as between the Lessor and National, the lease provisions contain no such allocation of liability vis-a-vis third parties. Stated another way, the provisions of the lease do not purport to bind Lessor to hold harmless or to indemnify National from claims of others who were damaged by National's fault. There is no indemnification or hold harmless language in the release provision of the lease as it relates to third parties. Thus, National is liable to the Mall Tenants.

VI.
For the reasons assigned, the judgment in favor of Vigilant against National and its insurer, Great Southwest, is reversed, and Vigilant's demands against National and Great Southwest are rejected. The judgment of the district court, as affirmed by the court of appeal, is otherwise affirmed.
REVERSED IN PART AND RENDERED: AFFIRMED IN PART.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting in part; concurring in part).
I disagree with the majority's conclusion that paragraph 11 of the lease releases National from all claims by the lessor for fire damage, even though caused by National's fault. In Polozola, we held that "a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such intention was expressed in unequivocal terms." (emphasis added). The majority attempts to find such an intention by reasoning that the only claims the lessor could have against National for damages caused by fire were claims based on National's fault, and that a finding that the release clause does not relieve National for damages resulting from fire caused by National's fault would render the clause virtually nugatory.
The majority fails to recognize that the lessee has other obligations under the lease. For example, under paragraph 3, the lessee is responsible for restoring "all broken glass, including plate." Under paragraph 4, the lessee agrees to "decorate the interior of the premises." In the event of a fire, however, the lessor undertakes the obligation to "repair, restore and rebuild the demised premises." For this reason, the lessor agrees to carry "replacement insurance in sufficient limits to rebuild total premises including demised premises." In the second clause of this sentence, the lessor discharges the lessee "from any and all claims and damages whatsoever from any cause resulting from or arising out of the fire." Taken as a whole, paragraph 11 seeks to have the premises restored as quickly as possible by the lessor. The second clause simply indicates that the lessor will take responsibility for matters which are usually the responsibility of the lessee, and will discharge the lessee from his ordinary contractual *367 duties under the lease.[1] The clause does not mention, and does not purport to deal with, the issue of fault. Clearly, it does not express in unequivocal terms an intent to relieve the lessee of the losses relating to his negligence.[2] Accordingly, I respectfully dissent on this issue. However, I concur with the majority opinion insofar as it finds National is liable to the mall tenants.
NOTES
[1] National's other liability insurer. Twin City Fire Insurance Company ("Twin City") did not apply for writs, and the judgment is apparently final as to that defendant.
[2] While the parties dispute the characterization of the release provision as an indemnity agreement and the court of appeal found the release provision was not an indemnity agreement, Louisiana courts have characterized contractual exculpatory agreements, as set forth in the release provision, as "in substance comparable to an agreement to indemnify one against one's own negligence. Such indemnification must be `expressed in unequivocal terms.'" See Melancon v. Juno, 337 So.2d 652, 653 (La.App. 4th Cir.1976) (quoting Green v. Taca Int'l Airlines, 304 So.2d 357, 361 (La.1974)); see also Litvinoff, Stipulations as to Liability and as to Damages, 52 Tul.L.Rev. 258, 284 n. 153 and 289 n. 184 (1978).
[3] LSA-C.C. Art. 2723 provides: "He can only be liable for the destruction occasioned by fire, when it is proved that the same has happened either by his own fault or neglect, or by that of his family."
[4] As the dissent in the court of appeal points out, courts have construed similar provisions as barring subrogation based on a finding "that the parties intended the lessee to be treated as an insured under the required fire policy and that the subrogated insurer does not have the right to subrogation against its own insured. Cf. Peninsular Fire Ins. Co. v. Louisiana Debating & Literary Assn., 385 So.2d 510 (La.App. 4th Cir.), and Peninsular, 385 So.2d at 513 (Lemmon J., concurring), writ refused, 393 So.2d 742 (La. 1980)." Home Insurance, 577 So.2d at 79.
[5] See Schechter v. S.S. Kresge Co., 579 F.2d 1231 (10th Cir.1978) (finding lease containing similar release and surrender provisions and requiring lessor to procure fire insurance exculpated lessee from liability). An excellent annotation on the subject, entitled "Validity, Construction, and Effect of Provision of Lease Exempting Landlord or Tenant From Liability on Account of Fire," appears in Annot., 15 ALR 3d 786 (1967).
[1] This interpretation harmonizes with other provisions of the lease specifically dealing with fire. The repair provision requires the lessee "to make necessary repairs, except such interior repairs due to fire or other casualty however caused." The lessee is also required to surrender the premises in as good a state as received "damage by fire or the elements, or from other causes beyond its control excepted." Thus, the lease shows a clear intent to shift the lessee's contractual burdens under the lease to the lessor in event of a fire.
[2] The majority's reasoning would also appear to release the lessee for claims for a fire intentionally started by him. It is difficult to believe the parties intended the language of paragraph 11 to produce such a result.