| xTHIBODEAUX, Judge.
This appeal arises from an action for a declaratory judgment filed by the Town of Mamou against American Honda Motor Company. James Carl Fontenot, an employee of Mamou, was injured in a work-related accident while operating an all-terrain-vehicle donated to Mamou by Honda. The donation agreement between Mamou and Honda contained a “hold harmless” clause in favor of Honda. The trial lacourt interpreted the agreement to release Honda from any responsibility for injuries and damages arising out of the use of the vehicle.
The parties prompt us to determine whether the indemnification clause contained within the Honda-Mamou donation permits Honda to be indemnified for its own liability under the Louisiana Products Liability Act (LPLA), La.R.S. 9:2800.51 — 2800.59. For the reasons which follow, we conclude that the parties’ agreement does not entitle Honda to receive indemnification. We, therefore, reverse the trial court’s judgment and remand this ease for further proceedings.

ISSUE

We must determine the appropriate standard which governs the construction of an indemnification agreement which purportedly permits an indemnitee to be indemnified against the consequences of its own products liability under The Louisiana Products Liability Act.

FACTS

On August 10, 1993, James Carl Fontenot sustained injuries in an accident that occurred as Fontenot operated an all-terrain-vehicle (ATV) which Honda manufactured and donated to Mamou. Fontenot filed a claim for damages on August 5, 1994 against Mamou based upon intentional tort theories and against Honda grounded in products liability.
On October 10, 1994, Honda made legal demand for indemnification and defense upon Mamou; therein, Honda alleged that, if an adverse judgment was eventually rendered against Honda upon Fontenot’s claim, Mamou would be liable to indemnify the manufacturer due to language contained in the Honda-Mamou donation. That language provides:
| gin consideration for the donation, the Town of Mamou agrees to do the following:
1. that the Town of Mamou, its employees and/or agents will hold [Honda] harmless in the event of any accident, death or injury to any person, or property damage caused by, or as a result of, the use of the donated vehicles after they are in the custody of the Town of Mamou, with regard to allegations relating to all acts of negligence against the Town of Mamou, its agents or employees, or any other persons using the donated units, (emphasis ours).
Also, Honda alleged that the parties’ agreement bound Mamou to defend Honda in Fon-tenot’s principal demand against the defendants.
On February 1, 1995, Mamou cross-claimed Honda seeking a declaratory judgment. Mamou petitioned the court to declare that the Honda-Mamou donation fails to bind Mamou to indemnify Honda for damage awards granted upon products liability claims. The matter came for trial on April 20, 1995. On May 26,1995, the district court held that, in the event of an adverse judgment awarding damages against Honda upon Fontenot’s principal demand, Mamou would be obligated to indemnify Honda; conversely, the court held that Mamou owed no duty to defend or reimburse Honda for its attorney’s fees and/or defense costs incurred on account of Fontenot’s principal demand.
In this suspensive appeal, Mamou assigns error to the trial court’s holding that the Honda-Mamou donation entitles Honda to be indemnified for its own products liability. Honda does not contest the trial court’s denial of its request for defense costs and attorney’s fees.

*679
LAW & DISCUSSION

The supreme court has decided that a contract of indemnity whereby the indemnitee is indemnified against the consequences of its own negligence is strictly construed, and that such a contract will be presumed not to indemnify an indemnitee |4against losses re-suiting to it through its own negligent acts unless such an intention is expressed in unequivocal terms. Polozola v. Garlock, 343 So.2d 1000 (La.1977). The supreme court has also decided that a slightly different standard governs when the indemnitee’s liability is based upon strict liability under La. Civ.Code art. 2317. See Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986). Soverign held that where the indem-nitee’s liability is based upon strict liability, the Polozola rule of strict construction is inapposite; instead, the court must:
(1) determine the common intent of the parties as to strict liability by applying the general rules of construction and interpreting each provision in light of the contract as a whole; and
(2) if the parties’ common intent as to strict liability remains in doubt, we must construe the contract further in light of everything that by law, custom, usage, or equity is considered incidental to the particular contract or necessary to carry it into effect.
Id. at 985.
Should the standard set forth by Polozola or Soverign govern our construction of this indemnification agreement? We now hold that the Soverign standard applies; accordingly, our quest begins by examining the general rules governing indemnity agreement construction. The Soverign court delineated those standards as follows:
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. Interpretation of a contract is the determination of the common intent of the parties. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.
Id. at 984 (citing myriad provisions from Chapter 13 of Title IV in Book III of the Louisiana Civil Code) (citations omitted) (footnotes omitted).
Applying the foregoing interpretive rules to the Honda-Mamou contract, we conclude that the parties did not intend to indemnify Honda against product liability claims lodged by third persons under the LPLA. Quite unlike other indemnification clauses construed through prior jurisprudence, Honda’s indemnification language was drawn quite narrowly. For instance, in Home Ins. Co. v. National Tea Co., 588 So.2d 361, 363 (La.1991), the parties agreed as follows:
The Lessor hereby covenants and agrees to carry replacement insurance in limits sufficient to rebuild total development including demised premises and does hereby release and discharge the Lessee, its agents, successors and assigns from any and all claims and damages whatsoever from any cause resulting from or arising out of any fire or other casualty on the herein demised premises or on said total development or any part thereof. (Original emphasis).
The Home court held that both the Lessor’s agreement to purchase fire insurance, as well as the broad language adopted by the parties’ — i.e. “any and all claims ... from any cause ... any fire” — clearly evinced the parties’ intent to shift the risk of fire loss to the lessor, and indemnify the lessee for its own negligence. Likewise, the Soverign parties agreed upon the following language:
Contractor [Atlas] shall fully defend, protect, indemnify and hold harmless the Company [Texas], its employees and agents from and against each and every claim, demand or cause of action and any liability, cost, expense (including but not limited to reasonable attorney’s fees and expenses incurred in defense of the *680 Company), damage or loss in connection therewith, which may be made or asserted by Contractor, Contractor’s employees or agents, subcontractors, or any third parties, (including but not limited to Company’s agents, servants or employees) on account of personal injury or death or property damage caused by, arising out of, or in any way incidental to, or in connection with the performance of the work hereunder, whether or not Company may have jointly caused or contributed to, by its own negligence, any such claim, demand, cause of action, liability, lacost, expense, damage or loss, except such as may result solely from the Company’s negligence.
Id. at 983 n. 1 (emphasis ours).
Construing this language in light of the contract’s other provisions and the agreement as a whole, the Soverign court held that the parties clearly intended to afford Texas indemnity against claims, causes of action, and strict liability arising under La.Civ.Code art. 2317. Moreover, the Polozola parties agreed to the following indemnification language:
Contractor assumes the entire responsibility and liability and will protect, indemnify and hold harmless Dow, its agents, servants and employees from, and against any and all losses, expenses, demands and claims made against Dow, its agents, servants and employees, by Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors or any other third person because of injury or alleged injury (including death), whether caused by Dow’s negligence or otherwise, arising from any source while Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors are on premises owned, operated or leased by Dow or under the control of Dow, or while Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors are performing under this agreement, and Contractor agrees to defend any suit, action or cause of action brought against Dow, its agents, servants or employees, based on any such alleged injury, and to pay all damages, costs and expenses, including attorneys’ fees, in connection therewith or resulting therefrom.
Id. at 1002 (original emphasis).
In construing the Polozola court concluded that “the contract unambiguously provides that [the Contractor] will indemnify Dow ... against any and all losses resulting from claims arising from any source.” Id. at 1003 (original emphasis).
Though lucid as to negligence claims filed against Mamou, the words of the Honda-Mamou donation are not clear and explicit regarding products liability claims lodged against Honda. The four-paragraph contract is exceedingly brief, and |7eaeh remaining provision adds nothing to the parties’ intent concerning indemnification. Quite unlike the Home provision, insurance is not addressed by the Honda-Mamou donation, nor is the “any claim” asserting “any liability” language recited. What we have here is a narrowly tailored provision which, given its plain meaning, expresses the parties’ intent to indemnify Honda only against claims asserting negligence against Mamou.
Construing the contract in light of everything that by law, custom, usage, or equity is considered incidental to the particular contract or necessary to carry it into effect, we again conclude that Honda is not entitled to indemnification under the language recited by the Honda-Mamou donation. “Custom” results from practice repeated for a long time and generally accepted as having acquired the force of law. La.Civ.Code art. 3. Equity and usage are given the following meanings:
Equity ... is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
Usage ... is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.
La.Civ.Code art. 2065.
The parties failed to demonstrate, and we do find that nothing — by law, custom, usage, or equity — is considered incidental to the *681 Honda-Mamou donation or necessary to carry it into effect.

CONCLUSION

Given its plain meaning, the Honda-Mam-ou indemnification clause fails to evince the parties’ intent to indemnify Honda for claims lodged against it under the LPLA. For the foregoing reasons we reverse the lower court’s ruling on Mamou’s cross-claim for declaratory judgment. Mamou owes no obligation to indemnify 18Honda against any potential damages award rendered upon Fonte-not’s products liability claim. This cause is remanded for further disposition consistent with our opinion. Honda is cast for the costs of this appeal.
REVERSED & REMANDED.