Dear Mr. Hutchison:
You requested the opinion of this office concerning whether the Department of Transportation and Development ("DOTD") of the State of Louisiana is obligated to reimburse the Public Belt Railroad Commission for the City of New Orleans (the "Commission") for the Department's pro-rata share of the cost of settlements and judgments paid to Public Belt employees or third persons pursuant to a Joint Maintenance Contract dated January 1, 1954, wherein the Commission undertook the responsibility to maintain the Huey P. Long Bridge in New Orleans (the "Bridge") at cost.
The control, operation and maintenance of the Public Belt Railroad (the "Railroad") is exclusively vested in the Commission pursuant to R.S.33:4530, et seq. The Commission, in conjunction with the State, constructed the Bridge pursuant to the provisions of a Bridge Contract (the "Bridge Contract") dated November 5, 1932. Under the Bridge Contract, the Bridge is comprised of three component sections:
(1) The railroad,
(2) The highway,
(3) Joint or common areas.
The railroad portion was necessary to facilitate the transportation of cargo to shipping docks; the highway, to facilitate private and commercial motor carriers; and, the common areas are accouterments to both the railroad and highway sections.
The Bridge Contract provided that it shall be the joint duty of the State and the Commission to maintain the Bridge, assigning a forty/sixty percent (40%/65%) ratio of the cost associated therewith, respectively. However, once the Bridge became operational, it was determined that the Commission, as the titular owner of the Bridge, should, from a practical standpoint, assume responsibility for the complete maintenance thereof. Accordingly, the standpoint, assume responsibility for the complete maintenance thereof. Accordingly, the parties entered into a Joint Maintenance Contract, dated July 1, 1936, pursuant to which the Commission undertook the obligation to maintain and keep in repair the entire Bridge. This contract terminated upon execution of a subsequent Joint Maintenance Contract (the "1954 Maintenance Contract"), dated January 1, 1954. This 1954 Maintenance Contract terminated, by its own provisions, when the mortgage indenture securing the Commission's bonds was satisfied. However, the 1954 Maintenance Contract has been continued in force through separate annual extensions.
The 1954 Maintenance Contract requires the maintenance and repair of the Bridge to be undertaken by Commission employees or contractors, and allocates the division of costs between the DOTD and the Commission based on a variable percentage equation, directly related to the three component sections, similar to the formula found in the Bridge Contract.
Paragraph 19 of the 1954 Maintenance Contract likewise allocates costs, as between DOTD and the Commission, for loss and damages resulting from (1) the maintenance and repair and (2) the use of the Bridge premised on a percentage ratio. The phrase "loss and damages" is defined to include:
 ". . . loss and damage to property and employees of both RAILROAD and STATE and also loss and damage to the persons and property of third persons."
Accordingly, it is the opinion of this office that DOTD is obligated to pay for its proportionate share of loss and damages resulting from (1) the maintenance and repair and (2) the use of the Bridge, as set forth in the 1954 Maintenance Contract.
However, this result raises the question of whether the Transportation Trust Fund (the "Trust Fund") can be used by DOTD to pay for its proportionate share of judgments and settlements for loss and damages resulting from the maintenance, repair and use of the Bridge.
Article VII, Section 27 of the Louisiana Constitution of 1974 established, within the state treasury, the Trust Fund, effective January 1, 1990. Section 27 (B) provides, in pertinent part, with regard to the permissible uses of said Trust Fund:
 (B) The monies in the trust fund shall be appropriated or dedicated solely and exclusively for the costs for and associated with construction and maintenance of the roads and bridges of the state and federal highway systems . . . (Emphasis added)
Constitutional provisions are to be construed and interpreted by the same rules as are other laws. City of New Orleans v. Scramuzza, 507 So.2d 215
(La. 1987); Firefighters' Retirement System v. Landrieu, 572 So.2d 1175
(La.App. 1st Cir. 1990), writ denied. The terms "construction" and "maintenance" as they relate to roads and bridges, are defined in R.S.48:1, as follows:
 (3) `Construction' means the act, operation, and process of building or fabricating a new facility of the Department of Transportation and Development or any part thereof or of bettering an existing facility.
 * * *
 (13) `Maintenance' is the operation, activity, and continuing process of repairing and preserving an existing highway or any part thereof to keep it at or near its original level or standard of usefulness.
This office has previously addressed the issue of what constitutes"costs for and associated with construction and maintenance of roads and bridges". Op.Atty.Gen. No. 89-679 held that such costs would include:
 ". . . the normal costs of highway construction and maintenance; in other words, payments to contractors who perform construction or maintenance work, and payment for purchases of materials and for labor actually performed by DOTD for construction and maintenance work.
 Also included would be salaries and related benefits of the employees of DOTD whose work is directly related to highway programs or other programs [that] may be funded out of the Transportation Trust Fund, and the necessary administrative costs associated therewith.
 It would not include paying judgments which were rendered against DOTD or the State prior to the effective date of the Transportation Trust Fund. Nor do we find that "costs for and associated with
construction and maintenance of the roads and bridges of the state and federal highway systems, the Statewide Flood-Control Program or its successor . . ." includes the payment of monies for which liability insurance premiums to the Risk Management Fund is used to pay judgments and settlements for claims against the state or DOTD. (Emphasis added)
Subsequent to the issuance of the above opinion, the legislature, in an effort to further delineate, by limitation, the permissible uses of Trust Fund moneys, enacted R.S. 48:78, which provides:
 In no event shall monies in the Transportation Trust Fund established in the Constitution of Louisiana be appropriated, dedicated, or otherwise used, directly or indirectly, for the payment of judgments or settlements by any state agency in matters arising in tort, or road hazard insurance, or for any other items inconsistent with highway and infrastructure construction, operations, and maintenance.
The Commission takes the position that the subject reimbursements merely represent costs incurred in maintaining the Bridge pursuant to the contractual obligations imposed upon the respective parties by the Bridge and Maintenance Contracts. While this contention is worthy of some merit, it would appear to be inconsistent with the clear and unequivocal language in R.S. 48:78 prohibiting against the indirect use of Fund moneys for the payment of judgments or settlements.
Accordingly, it is the opinion of this office that Trust Fund moneys may not be used to reimburse the Commission for a percentage of the monetary judgments and settlements which would otherwise be owed under the 1954 Maintenance Contract. In order to make such payments, there must be another funding source such as a general fund appropriation.
DOTD has expressed concern that the contractual language quoted above constitutes an indemnification clause against public policy. While R.S.38:2195 (A) generally nullifies provisions in public contracts which require a public entity to assume liability for damages arising out of injuries or property damage to the contracting parties or to third parties caused by the negligence of anyone other than the public body, its employees, or agents, as being contrary to the public policy of the state of Louisiana, this prohibition is inapplicable with respect to intrastate intergovernmental contracts. It would appear that the 1954 Maintenance Contract is an intrastate intergovernmental contract.
Assuming that the 1954 Maintenance Contract is an intrastate intergovernmental contract, and the general laws regarding indemnity contracts apply, we refer you to Fontenot v. Town of Mamou, 95-985 (La.App. 3 Cir. 6/5/96), 676 So.2d 677, writ denied, wherein the Court stated in pertinent part:
 The supreme court has decided that a contract of indemnity whereby the indemnitee is indemnified against the consequences of its own negligence is strictly construed, and that such a contract will be presumed not to indemnify an indemnitee against losses resulting to it through its own negligent acts unless such an intention is expressed in unequivocal terms. Polozola v. Garlock, 343 So.2d 1000 (La. 1977). The supreme court has also decided that a slightly different standard governs when the indemnitee's liability is based upon strict liability under La.Civ. Code art. 2317. See Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La. 1986). Soverign held that where the indemnitee's liability is based upon strict liability, the Polozola rule of strict construction is inapposite; instead, the court must:
 (1) determine the common intent of the parties as to strict liability by applying the general rules of construction and interpreting each provision in light of the contract as a whole; and
 (2) if the parties' common intent as to strict liability remains in doubt, we must construe the contract further in light of everything that by law, custom, usage, or equity is considered incidental to the particular contract or necessary to carry it into effect. Id. at 985.
 . . . our quest begins by examining the general rules governing indemnity agreement construction. The Soverign court delineated those standards as follows:
 The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. Interpretation of a contract is the determination of the common intent of the parties. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. Id. at 984 (citing myriad provisions from Chapter 13 of Title IV in Book III of the Louisiana Civil Code) (citations omitted) (footnotes omitted). (Emphasis added)
DOTD's argues that the "indemnification clause" is illegal, your counsel's opinion is contrary. We suggest that the parties either modify the contract to ensure that the indemnification clause is clear and unequivocal, or seek legislation to clarify the issue.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
xc: Rep. Jerry Luke Leblanc Larry Durant