1DAVID S. GORBATY, Judge.
Agricultural Excess and Surplus Insurance Company, both a direct defendant and third-party defendant, and G.P. Glyn-agin Enterprises, Inc., a third party defendant, appeal a- summary judgment rendered in favor of third-party plaintiffs, The New Orleans Aviation Board, New Orleans International Airport and/or the City of New Orleans, and defendants Hamp’s Enterprises, Inc., and Scottsdale Insurance Company. (The New Orleans Aviation Board, New Orleans International Airport and/or the City of New Orleans will be referred to herein coUectively as the New Orleans defendants.) For the fohowing reasons, we reverse the judgment of the trial court, and remand this matter for further proceedings.
FACTS:
On March 14, 1995, plaintiff Charles Roundtree was injured while working in the course and scope of his employment with Glynagin. Mr. Roundtree was inspecting a roof on a building owned by the New Orleans defendants in preparation for removal of asbestos shingles. As Mr. Roundtree probed the wood |?,below the roof shingles, the roof allegedly caved in, causing Mr. Roundtree to injure his knee.
One year later Mr. Roundtree and his wife filed suit against the New Orleans defendants, PoweU Insurance Company and XYZ Insurance Company. The New Orleans defendants answered the suit on their behalf and on behalf of their insurer, Americas Insurance Company. All liability was denied.
On April 26, 1999, the New Orleans defendants filed a third party demand *1093 against Glynagin and its insurer, alleging that an indemnification agreement existed between the New Orleans defendants, Hamp’s Enterprises, the contractor hired by the New Orleans defendants, and Glyn-agin, the subcontractor hired by Hamp’s. The New Orleans defendants averred in their petition that Glynagin contracted to defend the contractor (Hamp’s) and the owner of the building (New Orleans defendants) for or on account of any acts or omissions of Glynagin or its employees. Further, Glynagin’s insurer, Agricultural Excess and Surplus Insurance Company, had issued a policy of insurance naming Hamp’s and the New Orleans defendants as additional insureds. On June 1, 1999, an answer was filed on behalf of Agricultural denying that the policy of insurance to which the New Orleans defendants referred provided coverage as alleged, and, in fact, that the policy specifically excluded such coverage. The answer also denied that Glynagin owed indemnity to the New Orleans defendants.[1]
l3On December 15, 2000, plaintiffs filed a Supplemental and Amended Petition for Damages adding Hamp’s, its insurer Scottsdale, and Agricultural as defendants.[2] Plaintiffs alleged that Hamp’s was liable to plaintiffs pursuant to La. Civ. Code arts. 2315, 2316 and/or 2317. Specifically, plaintiffs alleged that Hamp’s failed to take adequate precautions to prevent Mr. Roundtree’s injuries.
On December 14, 2001, Scottsdale Insurance Company filed a Motion for Summary Judgment seeking its dismissal with prejudice from the suit on the grounds that Agricultural (and presumably its insured, Glynagin) had agreed to indemnify and defend the New Orleans defendants and Hamp’s. Alternatively, Scottsdale moved for summary judgment finding it and Agricultural to be co-primary insurers.
Agricultural, as direct defendant and third party defendant, and Glynagin, as third party defendant, also filed a Motion for Summary Judgment on January 16, 2002, arguing that neither Glynagin nor Hamp’s owed indemnification to the New Orleans defendants because neither the contract between Glynagin and Hamp’s nor the contract between Hamp’s and the New Orleans defendants provided indemnification for either Hamp’s or the New Orleans defendants’ own negligence. Rather, the indemnification agreement between Glynagin and Hamp’s provided only for indemnity in the event of Glynagin’s negligence.
14After a hearing on April 5, 2002, the trial court issued a judgment granting Scottsdale’s Motion for Summary Judgment and denying the motion filed on behalf of Glynagin and Agricultural.
In written reasons for judgment, the trial court explained that Glynagin owed a duty to defend and indemnify Hamp’s and the New Orleans defendants for or on account of any acts or omissions by Glyn-agin. Mr. Roundtree was in the course and scope of his job with Glynagin, performing the duties for which Glynagin had contracted with Hamp’s. The court found that there was “no contractual duty by The City to pre-inspect the roof before Glynagin, performed their services.” Thus, because Hamp’s was contractually indemnified by Glynagin, Hamp’s insurer, *1094 Scottsdale, had no contractual obligation in the case.
Although the trial court’s judgment does not specifically state that Scottsdale is dismissed from the lawsuit, the prayer contained in the motion for summary judgment requested the trial court to order Agricultural to defend Hamp’s and the New Orleans defendants, and to dismiss, with prejudice, Scottsdale. Thus, because summary judgment was granted, Scottsdale has been dismissed, with prejudice.
DISCUSSION:
Appellate courts review summary judgments de novo. Brown v. Connecticut General Life Ins. Co., 2000-0229, p. 2 (La.App. 4 Cir. 3/7/01), 793 So.2d 211, 212. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966 B. Summary judgments |sare favored, and the rules regarding such should be liberally applied. Brown, supra.
A. The Contracts
The subcontract between Glynagin’s and Hamp’s indicates that the work to be performed by Glynagin is “asbestos removal” on the “Program 3, Airport Demolition” project. The pertinent portions of the subcontract read as follows:
7. The SUBCONTRACTOR agrees to defend and bear the cost of litigation in any action brought against the CONTRACTOR and/or OWNER for or on account of any acts or omissions of the said SUBCONTRACTOR, its agents or servants and further agrees to Indemnify or otherwise reheve the CONTRACTOR and/or OWNER from any judgment for damages or hens established as a result of such proceedings.
8. The SUBCONTRACTOR agrees to provide and furnish prior to the commencement of work and as a condition precedent thereto; evidence of insurance sufficient to cover it’s [sic] work under this Contract for Workmen’s Compensation, Public Liability and Property Damage Insurance, and such additional coverage as stated in Paragraph 20 herein:[3]
Attached to the subcontract is a certificate of insurance indicating that Hamp’s Enterprises is an additional insured under a commercial general liability policy issued to Glynagin’s by Agricultural Excess and Surplus.
The agreement between Hamp’s and the New Orleans defendants is entitled “Agreement for Structural Removal Services.” Pursuant to this agreement, Hamp’s was to remove twenty-six structures belonging to the New Orleans defendants. The pertinent |fiportions of the contract between Hamp’s and the New Orleans defendants read as follows:
6. Indemnification. The Contractor agrees to indemnify, defend by counsel acceptable to the Board and hold harmless the City of New Orleans, the New Orleans Aviation Board and its members, agents, officers, employees and the property of the Board, from any and all claims, demands, actions, lawsuits, liability, losses, damages or expense incurred by the Board resulting from the Contractor’s performance of its obligations under this Agreement, specifically including without limitations, any claim, *1095 liability, loss or damage arising: (a) by reason of injury to person or property from whatever cause, in the construction or removal or demolition work forming the subject of this Agreement; (b) by reason of the Contractor’s failure to perform any requirement imposed upon it by and [sic] duly authorized governmental agency or political subdivision; (c) because of the Contractor’s failure or inability to pay as they may become due any obligations incurred by the Contractor in the operations to be conducted by it on the property described in Exhibit “A”; (d) by use of any improper materials or equipment in the performance of the Contractor’s obligations under this Agreement; (e) by or on account of any act or omission by the Agreement [sic] in the performance of its obligation under this Agreement; (f) by reason of noise emission, vibration, dust, fumes, smoke, vapor and other effects heretofore or hereafter caused by the operations of aircraft over and across the property described in Exhibit “A”.
7. Liability Insurance. At all times the Contractor shall maintain the insurance described below for the mutual benefit of the Contractor and the Board against the following risk:
(a)the Contractor agrees to maintain and furnish certification of insurance evidencing comprehensive public liability 17and property damage (or other applicable coverages) insurance in the amount not less that [sic] Five Hundred Thousand Dollars ($500,000.00) combined single limit during the term of the Agreement to remove any house. Such insurance policies must name the City of New Orleans, the New Orleans Aviation Board (NOAB), its directors, officers and employees as “additional insureds” to the full extent of the Contractor’s insurance coverage, but in no event less than the required minimum coverage limit amount. Contractor agrees that all insurance policies shall provide that they will not be altered or canceled without thirty (30) days written notice to the Board.
(b) Contractor shall provide the Board certificate of insurance evidencing the following:
1. Workers’Compensation....
2.Commercial Automobile Insurance ....
(c) Any other insurance, in the amounts as may from time to time be reasonably required by the Board against other insurance hazards which at the time are commonly insured against in the case of operations similarly conducted.
B. Indemnity
The first issue to be addressed is whether Glynagin is bound to indemnify Hamp’s and/or the New Orleans defendants under the terms of the contract between Glynag-in and Hamp’s.
Appellants argue they owe no contractual indemnity to the New Orleans defendants or Hamp’s because the indemnification agreement does not provide indemnity for the indemnitees’ own negligence. Specifically, appellants argue that plaintiffs’ allege that the New Orleans defendants and/or Hamp’s are liable under theories of strict liability and/or negligence for the condition of the roof, and, therefore, the negligence and/or strict liability of Hamp’s and/or the New Orleans 1 Sdefendants is not covered by the indemnity agreement. We agree. The indemnity agreement between Glynagin and Hamp’s clearly does not require Glynagin to indemnify Hamp’s for Hamp’s own negligence and/or strict liability, nor the New Orleans defendants for their negligence and/or strict liability.
*1096 In Home Ins. Co. of Illinois v. National Tea Co., 588 So.2d 361, 364 (La.1991), the Supreme Court reiterated its holding in Polozola v. Garlock, 343 So.2d 1000, 1003 (La.1977):
A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention is expressed in unequivocal terms.
Further, the Polozola court held that the general rules of interpretation of other contracts apply in interpreting indemnity contracts:
[A construction that renders a contract virtually nugatory] should be avoided in favor of one that gives the clause effect. When there is doubt as to the true sense of the words of a contract, they may be explained be referring to other words or phrases used in making the same contract. Further, all clauses of a contract should be interpreted the one by the other, giving to each the sense that results from the entire agreement. Finally, when there is anything doubtful in agreements, including indemnity agreements, we must endeav- or to ascertain what was the common intention of the parties, rather than adhere to the literal sense of the terms.
Home Ins. Co. of Illinois, supra, citing Polozola, 343 So.2d at 1003 (citations omitted). When after applying the rules set forth above, i.e., the general rules of 1 construction of contracts, and interpreting the provisions of a contract as a whole, the intent of the parties to indemnify against negligence remains equivocal, a presumption or inference arises that the parties did not intend to hold the indemni-tee harmless from such liability. Home Ins. Co. of Illinois, supra.
The plain language of the indemnity agreement in question indicates that Glynagin agreed to defend Hamp’s in any action brought against Hamp’s for any acts or omissions of Glynagin. There is nothing in the entire contract between the parties to suggest that Glynagin agreed to indemnify either Hamp’s for Hamp’s own negligence or strict liability, or the New Orleans defendants for their own negligence and/or strict liability. Plaintiffs have alleged that Hamp’s was negligent for failing to warn Mr. Roundtree about the dangerous roof condition. That issue has yet to be decided. Thus, it was error for the trial court to order Glynagin to defend Hamp’s against the allegations made specifically against Hamp’s. In turn, it was error for the trial court to order Glynagin to defend the New Orleans defendants because Glynagin was not contractually bound to indemnify the New Orleans defendants in any way.
The most serious error committed by the trial court was its dismissal of Scottsdale from the lawsuit. Because we find that Glynagin does not owe indemnity to Hamp’s for Hamp’s own negligence, Scottsdale, as Hamp’s insurer, is bound to defend Hamp’s. Therefore, by dismissing Scottsdale from the lawsuit, Hamp’s is left without a defense. Further, if a jury finds Hamp’s negligent for Mr. Roundtree’s injuries, the original plaintiffs cannot recover from Scottsdale.
Thus, considering the above, we find that there exist genuine issues of fact concerning the negligence and/or strict liability of the parties making summary judgment in favor of Scottsdale on the issue of indemnity inappropriate.
|in C. Insurance
Appellants also argue that only Hamp’s is an additional insured covered by the *1097 Agricultural policy. Appellees counter that the Agricultural policy also contains an endorsement naming the building owner, i.e., the New Orleans defendants, as additional insureds.
The written reasons for summary judgment indicate that the trial court granted the motion based solely on its finding that Glynagin owed indemnity and a defense to Hamp’s and the New Orleans defendants. The reasons do not indicate that the trial court considered the issue of insurance coverage. Therefore, because we find that the trial court erred in finding that Glyn-agin owed indemnity to Hamp’s and/or the New Orleans defendants for those parties own negligence and/or strict liability, we remand this matter to the trial court for consideration of the issue of insurance coverage.
Accordingly, for the reasons discussed above, we reverse the judgment of the trial court ordering Glynagin to defend Hamp’s and the New Orleans defendants, and dismissing Scottsdale Insurance Company from the lawsuit. Further, we remand this matter for the trial court to consider the issue of insurance coverage.
REVERSED AND REMANDED.
LOVE, J., Concurs With Reasons.

. The record indicates that an answer was not filed on behalf of Glynagin until February 18, 2002.

. Pursuant to the indemnity agreement entered into between Hamp’s and the New Orleans defendants, Hamp’s insurer, Scottsdale, also assumed the defense of the New Orleans defendants. Thus, Scottsdale was also substituted as the New Orleans defendants’ insurer in place of the erroneously named Powell Insurance Company.

. Paragraph 20 reads as follows: “The following additions, deletions and/or corrections to the above printed conditions are hereby acknowledged by both parties to form a part of this contract.” There is nothing noted below Paragraph 20.