686 So.2d 121 (1996)
Adrianne ACHEE, d/b/a Eileen's Expressions, Inc.
v.
NATIONAL TEA COMPANY, et al.
No. 95 CA 2556.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
*122 Richard L. Seelman, New Orleans, for Defendants-First Appellants National Tea Company, et al.
Thomas W. Mull, Covington, for Plaintiff-Second Appellant Adrianne Achee d/b/a Eileen's Expressions, Inc.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
PITCHER, Judge.
Plaintiff, Adrianne Achee, d/b/a Eileen's Expressions, Inc., and defendants, National Tea Company and its insurers, Great Southwest Fire Insurance Company and Twin City Fire Insurance Company, both appeal the trial court's judgment, awarding plaintiff damages totaling $134,212.68 for the destruction of her business caused by fire. We modify the judgment of the trial court, and, as modified, affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiff purchased Eileen's Expressions, Inc. (Eileen's), a Hallmark store, from Eileen King on September 10, 1983. The store was located in the Bogue Falaya Mall in Covington, Louisiana. Ms. King operated the store for approximately ten years before the sale to plaintiff.
On March 11, 1984, a fire erupted in the National Food Store that was located in the Mall. The fire spread throughout the Mall causing extensive fire and water damage to a number of the Mall's tenants, including Eileen's.
On March 8, 1985, plaintiff, along with numerous other tenants of the Mall, filed suit against several defendants, including National Tea Company, the owner of the National Food Store, and its insurers, Twin City Fire Insurance Company and Great Southwest Fire Insurance Company (collectively referred to herein as defendants). The trial court subsequently bifurcated the matter for trial on the issues of liability and damages.
After trial on the issue of liability, the court found that the cause of the fire was defective wiring in an oven installed by National, or under National's direction and control, and that the sole cause of the fire was National's fault. The court further found that the lease provisions in the shopping center lease relied upon by National neither released National from liability to the lessor and its subrogated fire insurer, Vigilant Insurance Company, nor held National harmless from the mall tenants' claims. Judgment was rendered in favor of Vigilant and the mall tenants against defendants for such damages as might be established in the trial on damages. The decision of the trial court was affirmed by this court in Home Insurance Co. of Illinois v. National Tea Co., 577 So.2d 65 (La.App. 1st Cir.1990). The Louisiana Supreme Court, in Home Insurance Co. of Illinois v. National Tea Co., 588 So.2d 361 (La.1991), reversed the judgment in favor of Vigilant against the defendants. In all other respects, the judgment was affirmed.
*123 A trial on the issue of damages was held on March 14, 1995. The trial court held that Eileen's Expressions was destroyed by the fire, and awarded plaintiff the sum of $178,521.39 in damages. The trial court itemized the damages as follows: $131,499.00 for loss of the value of the business, including future lost profits; $44,308.71 for damage to inventory and fixtures[1]; and $2,713.68 for clean-up costs.
Defendants filed a motion for new trial, contending that they were entitled to a reduction in the damages awarded to plaintiff to the extent of her insurance recovery from her insurer, General Accident Insurance of North America (GAI).[2] The trial court, in written reasons for judgment entered on August 14, 1995, found that plaintiff had recovered from GAI, under its insurance policy, the sum of $50,000.00 for loss of business personal property and $33,342.53 for loss of income/profits due to the interruption of the business. The court further found that defendants had subsequently repaid GAI its insurance proceeds paid to plaintiff for damaged inventory and fixtures in settlement of GAI's subrogation suit. The trial court reduced the judgment by $44,308.71, but refused to give credit for an additional sum of $33,342.53, stating that it was not convinced that defendants had established what this payment was for.
Defendants appealed the trial court's judgment, setting forth the following assignments of error for our review:
1. The trial court erred in holding that Eileen's Expressions was destroyed as a result of the fire, rather than interrupted.
2. The trial court erred in awarding damages to Eileen's Expressions that included both the loss of value of the business and future lost profits.
3. The trial court erred in failing to calculate Eileen's Expressions' damages for the period of interruption of its business based on lost net profits.
4. The trial court erred in failing to reduce its damage award for the loss of value of the business, including future lost profits, by the amount of the insurance recovery made by Eileen's on its business insurance policy for loss of income/profits.
Plaintiff has also appealed and urges the following assignments of error:
1. The trial court erred in limiting its award of damages to Adrianne Achee and "Eileen's Expressions, Inc." to "loss of value of business, including loss of future profits" and not including the net operating losses sustained in the three years after the fire in addition to the loss of value of the business.
2. The trial court erred in allowing into evidence certain subrogation documents over counsel for plaintiff's objection when no foundation was laid for the introduction of these documents and no witnesses were called to authenticate, verify and interpret these documents.
3. The trial court erred in rescinding its original award of $44,308.71 for damaged inventory and fixtures on the basis of the erroneously admitted subrogation documents. In ultimately failing to award the plaintiff any amount for damaged inventory and fixtures, the trial court ignored the uncontradicted evidence which proved that the plaintiff suffered property damage beyond either policy limits or subrogated credits.

BUSINESS DESTRUCTION/INTERRUPTION

(Defendants' Assignment of Error Number One)
In its first assignment of error, defendants contend that the trial court erred in holding that plaintiff suffered a destruction of her business. Defendants argue that, because the business reopened, notwithstanding the change of name and the relocation to another city, plaintiff suffered a business *124 interruption. The appropriate measure of damages to be recovered is dependent upon this determination.
Generally, a business interruption is a temporary cessation or impairment of the operations of an established business. After the cessation or impairment, the business returns to some semblance of what it was before the interference of its operations. See Morton M. Goldberg Auction Galleries, Inc. v. Canco, Inc., 94-0734 (La.App. 4th Cir. 1/31/95), 650 So.2d 801; Peacock's Inc. v. Shreveport Alarm Co., 510 So.2d 387 (La. App. 2nd Cir.), writs denied, 513 So.2d 826, 827, 828 (La.1987). However, the case law in Louisiana is silent as to what constitutes a business destruction. The term destruction, as defined by Webster's Ninth New Collegiate Dictionary, is "the state or fact of being destroyed." The term "destroy" means "put out of existence." Consequently, in our estimation, a business destruction simply means that a business is, in effect, put out of existence.
Defendants suggest that we look to other jurisdictions to aid in our determination of whether Eileen's Expressions was destroyed. Defendants specifically call our attention to the case of Sawyer v. Fitts, 630 S.W.2d 872 (Tex.Ct.App.1982). In Sawyer v. Fitts, the plaintiff was the owner of a clothing store whose roof collapsed when the defendant, and adjacent business owner, negligently caused the common wall between their building to collapse. The plaintiff's business was buried under a pile of brick, mortar, and beams. In Sawyer v. Fitts, the court noted that the appropriate measure of damages was dependent upon the ultimate fate of the business. In reaching its decision that the business was destroyed, the court noted that there was no evidence that the plaintiff ever went back into business.
Defendants argue that the opinion in the Sawyer case establishes that, if the plaintiff had resumed business at another site within a reasonable time, the court would have found that a business interruption, rather than a destruction, had occurred. Defendants further argue that, by applying factors in Sawyer v. Fitts to the instant case, we must draw the inescapable conclusion that the relocation of Eileen's Expressions to Metairie constituted a business interruption rather than a business destruction.
At trial, plaintiff testified that, after the fire, it was her intention to remain in her location at the Bogue Falaya Mall. However, several months passed before she was notified that the building was structurally unsound, and was unfit to reoccupy. Plaintiff testified that she attempted to find another location in the Covington area, but was unable to do so because of certain restrictions imposed upon her by the franchise agreement with Hallmark, Inc. As an alternative, plaintiff stated that she turned to the Metairie area to locate her business, since she had considered opening a second store in that area before the fire. Plaintiff further stated that she found a site that was suitable to Hallmark, Inc. in Metairie and reopened her business some seven and one half months after the fire under the trade name, "Adrianne's Hallmark."
The trial court, in concluding that plaintiff's business was destroyed rather than interrupted, noted that plaintiff was no longer doing business in the same location after the fire; plaintiff was serving a different market; and the goodwill that was acquired by doing business in Covington was not transferable to Metairie. The trial court also noted that these factors distinguished this case from the typical business interruption case. The trial court went on to conclude that plaintiff opened a new business, in a new location, with a new clientele and, as such, suffered a business destruction.
An appellate court may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Dabog v. Deris, 625 So.2d 492, 493 (La.1993). When viewing the factors articulated by the trial court, along with the fact the Metairie business was operating under a newly formed corporate entity, "Adrianne's Inc.," with a new trade name "Adrianne's Hallmark," we cannot say that the trial court erred in concluding that plaintiff suffered a business destruction. Adrianne's Hallmark was a new and different entrepreneurial endeavor from Eileen's Expressions. This new endeavor brought on *125 risk undertakings that would not have existed had this been simply a business reopening. We believe the trial court was correct in deciding that Eileen's Expressions was put out of existence by the fire of March 11, 1984. This assignment of error is without merit.

DAMAGES

(Defendants' Assignments of Error Numbers Two and Three)

(Plaintiff's Assignment of Error Number One)
Through Assignment of Error Number Two, defendants contend that the trial court erred in awarding plaintiff damages which included both the loss of value of the business and future lost profits. Defendants argue that the proper measure of damages for a business destruction is the value of the business at the time of the taking; therefore, lost profits are inapplicable. Plaintiff, through her assignment of error, argues that the trial court erred by limiting its award to loss of value of the business and not including the net operating losses sustained in the three years after the fire.
Just as the question of what constitutes a business destruction is res nova in Louisiana jurisprudence, so is the question of what is the appropriate measure of damages when a business destruction is found. This question, however, has been extensively dealt with in other jurisdictions. In Sawyer v. Fitts and the cases cited therein, the courts have held that the proper measure of damages for a business destruction is the loss of value of the business at the time of the taking. Sawyer v. Fitts, 630 S.W.2d at 874-875. We are persuaded by those decisions and hold that the proper measure of damages in the instant case is the loss of value of the business at the time of the destruction.
In its written reasons for judgment, the trial court stated that it had reviewed the testimony of the various experts and accepted the baseline figure of $43,833.00, calculated by Robert Laporte, plaintiff's Certified Public Accountant, as an accurate projection of annual lost profits by Eileen's Expressions. The trial court then used a multiplier of three years to arrive at the total sum of $131,499.00, and concluded that this amount constituted the value of the business, including future lost profits.[3]
After reviewing the depositions of the various experts, along with the stipulations of the parties, we cannot say that the trial court erred in the method used to determine the loss of value of plaintiff's business. It is obvious that the trial court adopted the approach used by Dr. Melville Wolfson, plaintiff's economic expert, to determine loss of value, along with the mathematical calculations of Mr. Laporte. The factfinder can credit the testimony of one expert witness where the testimony is not patently unsound and reject in part the testimony of another expert witness. See Lirette v. State Farm Insurance Co., 563 So.2d 850, 852-53 (La. 1990). This is exactly what happened here. Business valuations methods are not exact and are basically guides for buyers and sellers to use in an effort to determine what would be the fair market value for a given business. Given the dynamics of businesses and business practices, and factoring in circumstances that may be unique to the parties, an inflexible formula for determining loss of value would be impractical. Consequently, the trier of fact has much discretion in fixing the amount of damages due, and this determination will not be disturbed on appeal unless there is an abuse of discretion. See Creel v. S.A. Tarver & Son Tractor Co., Inc., 537 So.2d 752, 754 (La.App. 1st Cir.1988).
Therefore, the trial court's determination that the loss of value on the date of the fire was $131,499.00 is not manifestly erroneous. These assignments of error are without merit.[4]

*126 SUBROGATION

(Defendants' Assignment of Error Number Four)

(Plaintiff's Assignments of Error Numbers Two and Three)
In its fourth assignment of error, defendants claim that the trial court erred in failing to reduce plaintiff's damage award for the loss of value of the business, including future lost profits, by the amount of the insurance recovery made by plaintiff on her business insurance policy for loss of income/profits. Conversely, in Assignment of Error Number Three, plaintiff argues that the trial court erred in rescinding its original award of $44,308.71 for damaged inventory and fixtures on the basis of erroneously admitted subrogation documents.[5]
After judgment was rendered in the case sub judice, defendants filed a motion for a new trial, contending that they were entitled to a reduction in the damages awarded to plaintiff to the extent of the insurance recovery paid by GAI. The trial court concluded that defendants' subrogation claim should be recognized to the extent of $44,308.71, the amount originally awarded for damaged inventory and fixtures. However, defendants' claim for an additional $33,342.53 was denied because the trial court concluded that defendants failed to prove what this payment was for.
The record reflects that shortly after the March 11, 1984 fire, plaintiff notified GAI of the damages to the store, and made a claim under her insurance policy with GAI. Subsequently, plaintiff was contacted by K.R. Phillips, an outside adjuster retained by GAI to handle the claim. Negotiations ensued between plaintiff and Mr. Phillips, which resulted in a settlement of her business personal property claim for the $50,000.00 policy limits. These negotiations, however, did not bring about a settlement of her claim for loss of profits/income. Thereafter, with the help of her C.P.A., Mr. Laporte, and her attorney, Mr. Ray Orill, plaintiff was able to effect a settlement of her claim for loss profits/income for $28,284.23. Ultimately, she received an additional $5,057.50, which represented the ongoing salary paid to the store manager during the time that Eileen's Expressions was closed.
On March 1, 1985, plaintiff and GAI filed a suit claiming subrogation rights against several parties, including defendants for $80,364.92, the sums paid to plaintiff by GAI. On May 10, 1991, approximately six years after filing the subrogation action, the suit was settled for the full sum of $110,000.00. The suit was subsequently dismissed pursuant to court order on December 1, 1992. A document entitled "Receipt, Release, Reservation of Rights And Assignment of Claim" was executed by the parties. Pursuant to this document, GAI assigned all of its claims, causes of action, or rights of recovery which it had or may have to the extent of the payment to its insured of the sum of $80,364.92, to National's insurer, Great Southwest. It is these amounts that are at the heart of the subrogation dispute between plaintiff and defendants.
Subrogation is the substitution of one person to the rights of another. LSA-C.C. art. 1825. When subrogation results from a person's performance of the obligation of another, that obligation subsists in favor of the person who performed it, who may avail himself of the action and security of the original obligee against the obligor, but is extinguished for the original obligee. A. Copeland Enterprises, Inc. v. Slidell Memorial Hospital, 94-2011, p. 5 (La. 6/30/95), 657 So.2d 1292, 1296.
Defendants acceded to the rights of GAI upon settlement of GAI's subrogation suit, and any sums paid by GAI to plaintiff should have inured to their benefit. Thus, we find that the trial court was correct in reducing plaintiff's original award of $44,308.71.
*127 Additionally, a review of the testimony of all of the witnesses,[6] as well as other competent evidence in the record, clearly demonstrates that the $33,342.53 represented the amount that was paid to plaintiff by GAI in satisfaction of her claim for loss of profits/income. Therefore, the judgment of the trial court is modified to reflect a reduction of $33,342.53 to plaintiff's award.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is modified and plaintiff's award of damages is reduced by $33,342.53. In all other respects, the judgment of the trial court is affirmed. Costs are to be assessed equally between the parties.
NOTES
[1] In its written reasons for judgment, the court determined this figure by subtracting the salvage value of the inventory ($11,719.88) from the replacement cost of the inventory ($53,977.45).
[2] Eileen's Expressions and GAI filed a suit claiming subrogation rights against defendants for $80,364.92, the sums paid to plaintiff by GAI. This suit was subsequently settled for $110,000.00 and dismissed by the court.
[3] We view the trial court's reference to lost profits as nothing more than an underscoring of the method used to determine loss of value of the business.
[4] Because of the resolution of the issue presented in Defendants' Assignment of Error Number One, a discussion of the issue presented in Defendants' Assignment of Error Number Three is unnecessary.
[5] Through Assignment of Error Number Two, plaintiff contends that the trial court erred in allowing into evidence certain subrogation documents over plaintiff's objection. Our review of the record indicates that plaintiff did not object to the introduction of this evidence at the time of its offering. Plaintiff's failure to so object constitutes a waiver of the objection. See Andres v. Liberty Mutual Insurance Company, 568 So.2d 651, 656 (La.App. 3rd Cir.1990).
[6] We note that on page 214 of the record, Ms. Achee testified that she received a check for the sum of $33,341.73 from GAI to cover her lost income.