| tLOVE, Judge.
Plaintiff, Jay M. Napolitano, and defendant, Scottsdale Insurance Company both appeal the trial court’s judgment awarding plaintiff damages totaling $175,000 for injury to his business caused by fire. For the following reasons, we affirm the judgment of the trial court in respect to the damages awarded for loss on income because plaintiffs business was interrupted for a six-month period due to extensive fire and water damage. In contrast, we reverse the judgment of the trial court in its award on damages for loss of inconvenience because plaintiff was not present when the fire erupted.
FACTS AND PROCEDURAL HISTORY
On July 16, 1995, a fire erupted at the Tropical Plaza Office Complex (“Tropical Plaza”). The fire caused extensive fire and water damage to numerous tenants, including Jay Napolitano (“Mr. Napolita-no”), whose law practice was in the building.
Mr. Napolitano, along with other tenants of Tropical Plaza filed suit against several defendants, including Artist National Insurance company (“Artist”), the owner of Tropical Plaza, and its insurer, Scottsdale Insurance Company |j>(“Scottsdale”). Artist was in liquidation at the time of the fire. Prior to trial, all of the claims were settled except those of Mr. Napolitano and one other tenant.
*113 On November 9, 1999, the trial court found in favor of Mr. Napolitano and against Scottsdale. Mr. Napolitano was awarded $44,580 in property damage, $25,000 in inconvenience and $150,000 in lost profits. Mr. Napoliano appeals this judgment claiming that the trial court erred in its award of damages and asks this Court to increase those awards. In particular, Mr. Napolitano argues that an increase is proper because his office was strategically located near other businesses that increased his clientele. He also testified that at the time of trial he was still experiencing lost profits. Mr. Napolitano claims to have lost all of his “walk-up” business when he had to relocate to a different location.
Conversely, Scottsdale appeals the judgment arguing that the trial court committed manifest error in its award of damages. Specifically, Scottsdale argues that Mr. Napolitano failed to meet his burden of proof in showing that the loss of income he experienced lasted more than two and one-half to three months, and he did not provide sufficient evidence to link the fire with the loss of income. Scottsdale further argues that the court should not have awarded damages for loss of inconvenience because Mr. Napolitano was not in the “zone of danger” as required by Louisiana jurisprudence.
STANDARD OF REVIEW
The standard of review for appellate courts was ideally articulated in Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993):
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
hi) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
ASSIGNMENT OF ERRORS
Assignment of Error Number One:
The Trial Court erred when it awarded appellee $150,000 for loss of income.
Scottsdale argues that the trial court erred in awarding Mr. Napolitano any amount in loss of income or business interruption as a result of the fire because there was not adequate proof that the loss of income was directly attributable to the fire. Scottsdale categorizes Mr. Napolita-no’s loss of income as business interruption as defined in Achee v. National Tea Co., 686 So.2d 121 (La.App. 1 Cir.1996). The court concluded that business interruption is a temporary cessation or impairment of the operations of an established business. After the cessation or impairment, the business returns to some semblance of what it was before the interference of its operations. Achee v. National Tea Co., 686 So.2d 121 at 123. Therefore, Scottsdale argues that the longest amount of time that Mr. Napolitano can be awarded loss of profits due to business interruption is from July 16, 1995 until early October, *114 1995, because that is when Mr. Napolita-no’s business returned to some semblance of its former operation.
|4In contrast, Mr. Napolitano answered the appeal and stated that there was a temporary cessation of all operations, followed by the resumption of some of the business, but the business never returned to any semblance of what it was before the fire because he had to relocate to an area that was not conducive to walk-up business.
From our review of the record, it is evident that the trial court did not abuse its discretion when it evaluated Mr. Napol-itano’s lost profits. We find that Mr. Na-politano experienced a business interruption and his business did not fully return to a “semblance” of the previous business for six months. This classification is buttressed by the trial court’s finding that “Mr. Napolitano suffered a loss in income during the time he was relocating and reorganizing”. The trial court further stated that “anything further would be speculative and not attributable to the fire.” Additionally, the trial court relied heavily on the fact that Mr. Napolitano had a month to month lease and the ownership of the Tropical Plaza was not stable. The trial court used this information as a guide for fixing the amount of damages at $150,000.
With regard to the award of damages, there must be a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or low in proportion to the injury that it “shocks the conscience.” Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
Because we cannot say that this award is so high that it offends the conscience or shocks the sensibilities, we will not disturb the trial court’s finding by increasing or decreasing the award.
|BScottsdale also argues that there was only one person that testified regarding Mr. Napolitano’s loss of income and the court can not rely on such testimony absent independent corroboration. Scottsdale cites Morton M. Goldberg Auction Galleries, Inc. v. Canco, Inc., 650 So.2d 801 (La.App. 4 Cir.1995) in support of its argument.
In Goldberg the court found that the experts assumed that the information produced by the plaintiffs experts were true without proper analysis; therefore, the court found that the testimony was unsubstantiated. However, in the present case, the expert had the benefit of the journals salvaged from the fire. The trial court found that the journals accurately reflected the amount of lost profits to Mr. Napolitano’s law practice. Hence, we find no merit in this argument.
Assignment of Error Number Two:
The . Trial Court erred when it awarded appellee $25,000 for inconvenience.
Scottsdale maintains that Louisiana law allows recovery for inconvenience caused by injury to one’s property at a time when one is present or nearby and as a result experiences trauma. Scottsdale states that Mr. Napolitano was not in the “zone of danger” as required by McDonald v. Illinois Cent. Gulf Railroad Co., 546 So.2d 1287 (La.App. 1 Cir.1989).
In McDonald, a train derailed causing a huge explosion. The explosion caused a fire to erupt and it blew out the front windows of the Quick Stop Grocery Store, which was owned and operated by Mr. and Mrs. McDonald. After the fire encircled the store, Mr. McDonald was forced to evacuate the area. Shortly thereafter, he went home to rescue his wife who was asleep in their home. The two were forced to flee their home and store without any *115 personal items, and had to | Jive with relatives. For two weeks the town was evacuated and the McDonalds were denied access to their store and home.
The trial court awarded damages for inconvenience since Mr. McDonald personally witnessed the explosion that destroyed his property and even though Mrs. McDonald was asleep during the explosion she testified that she heard the explosion from her home. The court noted that the store was located only a short distance from the McDonald home. Consequently, the court found that the McDonald’s were in the “zone of danger” because they were present and witnessed the devastation to their property.
Unlike the McDonald’s, in the present case, Mr. Napolitano was not at the scene of the fire and did not witness the fire that damaged his law practice. Although, Mr. Napolitano testified that he and his staff spent numerous days going through damaged files, it does not appear that he was in the “zone of danger” as in the McDonald case. Hence, the record does not support an award of damages for inconvenience. Therefore, we find that the trial court erred in awarding $25,000 in damages for inconvenience.
DECREE
Accordingly, we find no error in the trial court’s awarding of damages of $150,000 in lost profits. However, the trial court did err in its award of $25,000 for inconvenience. Therefore, the judgment of the trial court is affirmed in part and reversed in part.
AFFIRMED IN PART; REVERSED IN PART.